# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF LOUISIANA
# MONROE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CIVIL ACTION NO. 06-30039-09 |
| VERSUS | * | JUDGE JAMES |
| CONSUELO SANCHEZ | * | MAGISTRATE JUDGE HAYES |

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a Motion to Suppress filed by the defendant, Consuelo Sanchez ("Sanchez") (Document No. 83). For reasons stated below, it is recommended that the motion be **DENIED.**

## BACKGROUND

On September 28, 2006, at the Sportsman One Stop, 420 North Chestnut, Tallulah, Louisiana, Sanchez was arrested pursuant to an arrest warrant obtained after her indictment on charges stemming from an alleged violation of 18 U.S.C. §371 and 18 U.S.C. §2320 and for alleged false representation and use of a social security account number under 42 U.S.C. §408(a)(7)(B). On January 12, 2007, Sanchez filed a motion to suppress alleging that she had not been arrested pursuant to a valid warrant and that the statement she gave at the scene of the arrest was not given pursuant to a valid waiver of her *Miranda* rights. An evidentiary hearing was held in this matter on June 29, 2007.

## LAW AND ANALYSIS

The evidence presented at the hearing indicates that Sanchez was arrested pursuant to valid arrest warrant and that the statement given at the scene of the arrest was given pursuant to a knowing and voluntary waiver of her *Miranda* rights. Louisiana State Trooper Cameron Douglas, FBI Agent Jeffrey Goins, and other law enforcement officers arrested Sanchez pursuant

to a valid arrest warrant following her indictment.  The officers were dressed in clothing which identified them as law enforcement and some of them were traveling in marked police vehicles.  When the officers entered the store, at which time they were brandishing no weapons, they identified themselves as law enforcement, told Sanchez that they had a warrant for her arrest, that she would be transported to jail, and that they would like to talk to her.  At that time, Agent Goins read Sanchez her rights according to the standard Federal Bureau of Investigation Advice of Rights form.  Agent Goins then asked Sanchez if she understood her rights, to which she responded that she did.  Sanchez then signed the Advice of Rights form indicating that she understood her rights and was willing to waive those rights and answer questions without a lawyer.[1]  Because Sanchez indicated that she was unable to read English well, the portion of the form indicating that the individual has read the statement of right was crossed out, and Sanchez initialed the crossed out portion.

      The evidence further indicates that Sanchez's waiver of her rights was knowing and voluntary.  Sanchez's counsel made an issue of the fact that Sanchez was unable to read the rights form; however, the fact that Sanchez did not read the rights form is not determinative on the issue of her understanding of her rights.  All three law enforcement officers who testified at the hearing, all of whom were present when Sanchez was read her rights and signed the consent form, stated that there was no doubt in their minds that Sanchez understood English and that she understood her rights.   Trooper Douglas testified that he had prior experience conversing with Sanchez in a non-interrogation, undercover setting, and that she was capable of understanding

---

[1] The name Sanchez used in signing the form, Liticia Mireles Torres, is undisputedly one of the names by which the defendant is known, and it is undisputed that the defendant was the person who signed the form.

and communicating in English.  Douglas and Goins both testified that, prior to signing the waiver of rights form, Sanchez conversed with them in English at the scene of arrest.  Moreover, at the hearing in this matter, there was no interpreter present and Sanchez repeatedly conversed with her attorney without the need of an interpreter, and Sanchez has not requested an interpreter at any stage of these proceedings.  The testimony also indicated that Sanchez was able to converse with the officers at the scene regarding her medical conditions, including multiple surgeries and the resulting scars.  Thus, there is ample evidence that Sanchez was capable of understanding and conversing in English.

 Furthermore, both Trooper Douglas and Agent Goins testified that, at no time during the execution of the arrest warrant was any physical force used nor were there any unduly intimidating or coercive tactics used by any of the officers at the scene of the arrest. This claim is supported by the fact that the other individual who was arrested at the same time, Ahmed Ali Nagi, did request an attorney and was not interviewed by the officers.   Agent Goins testified that he was certain Sanchez understood her rights, and that if he had had any indication that Sanchez did not fully understand her rights, he would have taken steps to ensure that she did so before attempting to obtain a waiver.

 Sanchez's counsel repeatedly questioned Trooper Douglas and Agent Goins regarding whether they explained to Sanchez the meaning of the term "waiver" when they were reading the rights and obtaining her waiver.  However, the form that the rights were read from does not use the term "waiver," but instead states "I understand what my rights are.  At this time, I am willing to answer questions without a lawyer present," language which is much simpler to understand than the term "waiver."  Thus, the officers' failure to explain what "waiver" means is irrelevant to Sanchez's understanding of her rights. Sanchez's counsel also repeatedly questioned the officers

3

about whether they informed Sanchez that she had a right to an appointed attorney if she could not afford one and that she had a right to have an attorney present during questioning. Again, the form that Agent Goins read to the defendant specifically and clearly informed her of her right to have an attorney present and the right to appointed counsel before any questioning. Therefore, counsel's arguments in this regard must fail.

Accordingly, the undersigned finds that the Government had carried its burden of demonstrating that the defendant was arrested pursuant to a valid warrant based on a grand jury indictment and that the statement at issue was obtained pursuant to a knowing and voluntary waiver of the defendant's rights. Sanchez's constitutional rights were not violated, and it is therefore recommended that her motion to suppress be DENIED.

## CONCLUSION

For the reasons stated above, it is recommended that defendant's Motion to Suppress be **DENIED**.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) business days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE**

**SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 29th day of June, 2007.

_____
KAREN L. HAYES
U. S. MAGISTRATE JUDGE